

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00292-CR

_____

**AQUORIDA EUGENE HARRIS, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2016-1072-CI; Honorable Ralph T. Strother, Presiding

April 29, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Aquorida Eugene Harris, was convicted following a bench trial of possession of a controlled substance (methamphetamine) in an amount of four grams or more but less than two hundred grams, with intent to deliver, a first degree felony.[1]

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2017).

Appellant's range of punishment was enhanced by a prior felony conviction and the court assessed his sentence at forty-years confinement.[2] In a single issue, Appellant asserts that because the indictment did not allege the amount of methamphetamine Appellant possessed included adulterants or dilutants, the evidence is insufficient to show he possessed the requisite weight of methamphetamine in a pure form.[3] The trial court's judgment is affirmed.

BACKGROUND

In July 2016, an indictment issued alleging that on or about April 11, 2016, Appellant knowingly possessed with intent to deliver a controlled substance, methamphetamine, in an amount of four grams or more but less than two hundred grams. It also contained an enhancement paragraph alleging that on September 27, 2007, Appellant was finally convicted of felony possession with intent to deliver a controlled substance, methamphetamine (enhanced).

At the bench trial, the State's evidence established that on April 11, 2016, at 3:00 a.m., Officers Jeremy Finch and Ruston Thompson approached a car in the parking lot of an apartment complex because its doors were open and there appeared to be no one in the car. As they approached on foot, two persons exited the car and started walking

---

[2] In September 2007, Appellant was finally convicted of possession of a controlled substance, methamphetamine, with intent to deliver. *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2018). He pleaded "true" to the enhancement.

[3] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between the precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal should be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

away. A black male exited on the driver's side and Appellant exited on the passenger's side.

When the officers spoke to Appellant, he told them his name was Roderick Wilson. The officers ran his information through their computer, and nothing came up. They tried a different spelling, but the same result was reached. When Officer Finch approached Appellant to handcuff him for failing to identify himself, Appellant confessed that he was lying about his identity and there was a warrant out for his arrest. When he was searched, the officers found an ID card in his wallet bearing the name Aquorida Harris. Officer Finch also discovered a small plastic bag in Appellant's pocket containing a white-colored residue.

In the door pocket of the passenger's side, the officers found a small glass pipe adapted to smoke drugs. It appeared to have been used. The officers also found a Fuze drink bottle with some clear plastic tubing that contained a white crystalline substance along with the liquid. Officer Finch went back to his patrol car and asked Appellant about the pipe and Fuze bottle. Appellant indicated that he did not know anything about the items even though the items were easily visible from his seat in the car.

In the back of the car, Officer Thompson found a small, green draw-style bag containing a pill bottle and sunglasses case. There were also several small plastic bags containing a white crystalline substance. The plastic bags were consistent with the plastic bag retrieved from Appellant's pocket. The bag also contained a small digital scale. The pill bottle contained several multi-colored plastic bags and clear plastic bags that were also consistent with the bag retrieved from Appellant. The sunglasses case contained

small plastic bags like the bags in the pill bottle. The substance in the bags tested positive for amphetamine and the contents of the Fuze bottle tested positive for methamphetamine. A backpack in the trunk bearing Appellant's name was found to contain items consistent with the construction of the pipe—clear plastic aquarium tubing, hot glue sticks, and soft grips for pens.

After denying that he knew anything about what was in the green bag, Appellant admitted that he was smoking from the Fuze bottle in the car. He also said the driver had done nothing wrong and the items in the green bag belonged to him. The officers later identified the car as belonging to the driver's mother-in-law. When they weighed the methamphetamine at the property room, after removing the packaging, the drugs including the liquid containing methamphetamine, weighed 177.4 grams. The methamphetamine in the bags alone weighed a total of 14.6 grams. Officer Thompson testified that in his opinion, the sizeable amount of methamphetamine combined with the digital scales and plastic bags indicated Appellant was a dealer.

James Milam, a DPS forensic scientist, tested the methamphetamine recovered from the incident. The liquid in the Fuze bottle weighed 155.13 grams and contained methamphetamine. The items in the plastic bags weighed in excess of 9.8 grams and were methamphetamine.

Appellant testified in his defense that he did not own the drugs apart from the baggie found in his pocket. He admitted adapting the Fuze bottle for smoking methamphetamine and he admitted smoking from the bottle in the car. He also agreed with his counsel the Fuze bottle contained 155 grams of drugs and on cross-examination,

4

admitted the Fuze bottle belonged to him. However, he denied knowing anything about the green bag containing methamphetamine.

In closing arguments, defense counsel candidly admitted that under the law, the weight of a drug includes "any mixture, dilutant, any of those types of things," and Appellant had "admitted to the 155 grams" during examination. He also contended that Appellant did not know anything about the green bag or its contents. The State asserted the evidence was clear that Appellant had care, custody, and control over the green bag and admitted to the arresting officers that he owned the green bag. Thereafter, the trial court found Appellant guilty as charged in the indictment.

Appellant asserts on appeal there is insufficient evidence supporting his conviction because the State failed to allege in the indictment that the amount of methamphetamine Appellant possessed included adulterants or dilutants. As a result, he contends the evidence was insufficient to show he possessed methamphetamine *in a pure form* in an amount within the applicable range of punishment alleged. We disagree.

APPLICABLE LAW AND STANDARD OF REVIEW

Section 481.112(a) states "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017).[4] To prove the offense of possession with intent to deliver, as defined by section 481.112(a), the State was required to show that Appellant (1) exercised "actual care, custody, control,

---

[4] Throughout the remainder of this memorandum opinion, provisions of the Texas Health and Safety Code will be cited simply as "section ___" and "§ ___."

or management" of the substance, (2) knew the substance possessed was contraband, and (3) possessed the substance with an intent to deliver it. *See* TEX. PENAL CODE ANN. § 1.07(39) (West Supp. 2017); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Further, the accused's connection with the controlled substance must be more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The element of intent to deliver may be proven by circumstantial evidence. *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.); *Gonzales v. State*, 761 S.W.2d 809, 815 (Tex. App.—Austin 1989, pet. ref'd).

In determining the sufficiency of the evidence with respect to an intent to deliver, we must presume the trier of fact resolved any conflict in favor of the prevailing party. *Jordan*, 139 S.W.3d at 727. Factors that may be considered in determining intent to deliver include the nature of the location of the defendant's arrest, the quantity of drugs possessed, the manner in which the drugs are packaged, the presence or absence of drugs indicating use or sale, whether the defendant possessed a large amount of cash, and the defendant's status as a drug user. *Reed v. State*, 158 S.W.3d 44, 48-49 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). In fact, possession of a large quantity of drugs alone can be sufficient evidence to show an intent to deliver in the presence of expert testimony by a law enforcement officer that the quantity at issue indicates an intent to deliver. *Id.* at 49 (holding evidence is legally sufficient in light of expert testimony that such a large amount was intended for sale); *Simmons v. State*, 100 S.W.3d 484, 491 (Tex. App.—Texarkana 2003, pet. ref'd) (holding evidence legally sufficient due to a large amount of cocaine seized and expert testimony that such a large amount was intended for sale).

6

The only standard of review recognized by the Texas Court of Criminal Appeals in reviewing the sufficiency of the evidence necessary to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 623 (Tex. Crim. App. 2017). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Furthermore, in a proper analysis, the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses; TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979), and a reviewing court may not re-evaluate the weight and credibility determinations made by the fact finder. *Febus v. State,* 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). Thus, we resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

"The duty of the reviewing court is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged." *Queeman*, 520 S.W.3d at 621. "Under this standard, evidence may

7

be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

ANALYSIS

Section 481.112(d) provides that possession of a controlled substance with intent to deliver is a "felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, *including adulterants or dilutants*, four grams or more but less than 200 grams." Thus, as to the weight of the controlled substance, the State is not required to prove the *pure* amount of the controlled substance, absent any adulterants or dilutants, as Appellant suggests. *See Williams v. State*, 936 S.W.2d 399, 405 (Tex. App.—Fort Worth 1996, pet. ref'd).

Furthermore, to the extent that Appellant asserts there was some defect in the indictment because it did not include the language "including adulterants or dilutants," he has waived that complaint. The Texas Constitution was amended in 1985 to define an indictment as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense" and "[t]he presentment of an indictment or information vests the court with jurisdiction over the cause." TEX. CONST. art. V, § 12(b). As a result of this amendment, defects in an indictment, even substantive ones, no longer deprive a trial court of subject matter jurisdiction. *Kirkpatrick v. State*, 270 S.W.3d 324, 328-29 (Tex. Crim. App. 2009) (citing *Teal v. State*, 230 S.W.3d 172, 181-82 (Tex. Crim. App. 2007)). Now, a defendant must object to a substantive defect in an indictment *before trial* or else he forfeits his right to object to such defect on appeal or by collateral attack. TEX.

8

CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). The omission of an element of the charged offense is considered a substantive defect that must be objected to before trial. *See Smith v. State*, 309 S.W.3d 10, 18 (Tex. Crim. App. 2010). Therefore, to the extent Appellant is asserting that the indictment in this case is defective because it did not allege an element of the offense, he did not file a motion to quash the indictment or otherwise complain before the trial began about the State's failure to allege an element of the charged offense, and accordingly, he has waived this issue. *See id.*; TEX. CODE CRIM. PROC. ANN. art. 1.14(b).

The State's evidence at trial indicated that Appellant admitted to the police that he was smoking from the Fuze bottle found in the car, that the driver had done nothing wrong, and the items in the green bag belonged to him. Milam, a DPS forensic scientist, weighed the items without packaging and determined that the liquid in the Fuze bottle containing methamphetamine weighed 155.13 grams[5] and the methamphetamine in the plastic bags weighed 9.8 grams. Officer Thompson opined that the sizeable amount of methamphetamine found in the car, along with the digital scales and plastic bags containing methamphetamine indicated Appellant was dealing in drugs. In addition, the bag containing methamphetamine found on Appellant was consistent with the small plastic bags containing methamphetamine found in the green bag, and the materials used to adapt the Fuze bottle for smoking drugs were consistent with the materials found in Appellant's backpack. Furthermore, the outcome of the bench trial indicates that the trial

---

[5] Appellant asserts that because of the alleged defect in the indictment, the State was required to establish the amount of methamphetamine in the Fuze bottle less the liquid. This is not an element the State is required to prove. *See Williams*, 936 S.W.2d at 405. Moreover, because the chunks of methamphetamine in the baggies weighed 9.8 grams, the State met its burden of proof independent of the liquid in the Fuze bottle.

court gave very little, if any, weight to Appellant's testimony that he was not the owner of the methamphetamine in the green bag.

Reviewing the evidence in a light most favorable to the verdict, we conclude that there is sufficient evidence because a rational trier of fact could have found that Appellant possessed methamphetamine in an amount of four grams or more but less than two hundred grams, as measured "by aggregate weight, including adulterants and dilutants," with intent to deliver. § 481.113(a) and (d). *See Jackson*, 443 U.S. at 319. Appellant's single issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.